# EXHIBIT 1

## CHAPTER 140

**AN ACT** concerning motor vehicle open recalls and motor vehicle franchises, supplementing Title 56 and Title 39 of the Revised Statutes, and amending P.L.1989, c.24 and P.L.1977, c.84.

**BE IT ENACTED** *by the Senate and General Assembly of the State of New Jersey:*

C.56:10-32 Short title.

1. Sections 1 through 5 of P.L.2025, c.140 (C.56:10-32 to 56:10-35 and C.39:3-4g) shall be known and may be cited as the "Motor Vehicle Open Recall Notice and Fair Compensation Act."

C.56:10-33 Definitions.

2. As used in sections 2 through 5 of P.L.2025, c.140 (C.56:10-33 to 56:10-35 and C.39:3-4g):

"Chief administrator" means the Chief Administrator of the New Jersey Motor Vehicle Commission.

"Commission" means the New Jersey Motor Vehicle Commission established pursuant to section 4 of P.L.2003, c.13 (C.39:2A-4).

"Do-not-drive notice" means a notification issued by a motor vehicle franchisor, or the National Highway Traffic Safety Administration, to a motor vehicle franchisee, which notice states that certain used motor vehicles in inventory are unsafe to drive and shall not be sold or leased, at either retail or wholesale, due to a recall.

"Manufacturer" means an entity engaged in the business of making or assembling new motor vehicles that manufactures or assembles at least 10 new motor vehicles per year under normal business conditions.

"Motor vehicle franchisee" means the same as that term is defined in section 1 of P.L.1977, c.84 (C.56:10-13).

"Motor vehicle franchisor" means the same as that term is defined in section 1 of P.L.1977, c.84 (C.56:10-13).

"New motor vehicle" means a new motor vehicle, as that term is defined in section 1 of P.L.1977, c.84 (C.56:10-13), that is subject to an open recall, or has been recalled, in accordance with federal law.

"New motor vehicle dealer" means the same as that term is defined pursuant to R.S.39:10-2.

"Open recall" means a recall that has not been corrected or addressed.

"Recall" means a safety or emissions recall on a specific motor vehicle that requires: (1) manufacturer notification pursuant to 49 U.S.C. s.30118, 49 U.S.C. s.30119, or any other federal law or regulation; and (2) repairs or modifications to a motor vehicle by an authorized new motor vehicle dealer or an authorized used motor vehicle dealer.

"Retail" does not include wholesale sales, sales between new motor vehicle dealers or used motor vehicle dealers, or sales to owners or operators of motor vehicle junk businesses or motor vehicle junk yards, as those terms are defined in R.S.39:11-2, or any other person engaged in the business of dismantling, destroying, or recycling motor vehicles.

"Stop-sale notice" means a notification issued by a motor vehicle franchisor to its motor vehicle franchisee stating that certain used motor vehicles in inventory shall not be sold or leased, at either retail or wholesale, due to a recall.

"Used motor vehicle" means the same as that term is defined in R.S.39:10-2.

"Used motor vehicle dealer" means the same as that term is defined pursuant to R.S.39:10-2.

C.56:10-34 Standing, motor vehicle franchisees, corporation, association.

3. Any corporation or association that is primarily owned by or comprised of motor vehicle franchisees, which corporation or association primarily represents the interests of motor vehicle franchisees, shall have standing to bring an action before any court of competent jurisdiction, for itself or by, for, or on behalf of any motor vehicle franchisee or group of motor vehicle franchisees for any violation of the "Franchise Practices Act," P.L.1971, c.356 (C.56:10-1 et seq.), as amended and supplemented, which violation was allegedly conducted by a motor vehicle franchisor with motor vehicle franchisees, if:

a. at least one of the corporation's or association's members has independent standing to sue;

b. the interests that the action seeks to protect are germane to the corporation's or association's purpose; and

c. neither the claim asserted nor the relief requested requires any individual members of the corporation or association to participate in the action.

C.56:10-35 Recall service, repair, insufficient part or parts necessary, compensation.

4. a. If a part or the parts necessary to perform a recall service are not reasonably available to perform a recall service or repair on a used motor vehicle held for sale by a motor vehicle franchisee authorized to sell and service new motor vehicles of the same line-make within 30 days of the motor vehicle franchisor issuing the initial recall notice, and the motor vehicle franchisor has issued a stop-sale notice or do-not-drive notice on the motor vehicle, the motor vehicle franchisor shall compensate the motor vehicle franchisee at a prorated rate of at least 1.5 percent of the value of the used motor vehicle per month beginning 30 days after the motor vehicle franchisor issued the stop-sale notice or do-not-drive notice to the motor vehicle franchisee until the earlier of either:

(1) the date that the recall parts or parts necessary to perform recall service are made available; or

(2) the date that the motor vehicle franchisee sells, trades, or otherwise disposes of a used motor vehicle that is subject to a stop-sale notice or do-not-drive notice.

b. The value of a used motor vehicle shall be the average trade-in value for used motor vehicles as indicated in an independent third-party guide for the year, make, and model of the recalled motor vehicle.

c. Subject to the provisions of section 3 of P.L.1977, c.84 (C.56:10-15), it shall be a violation of this section for a motor vehicle franchisor to reduce the amount of compensation otherwise owed to a motor vehicle franchisee through a chargeback, the removal of the motor vehicle franchisee from an incentive program, or a reduction in the amount owed under an incentive program because the motor vehicle franchisee has submitted a claim for reimbursement pursuant to this section. Nothing in this subsection shall prohibit a motor vehicle franchisor from discontinuing an incentive program.

d. All reimbursement claims made by motor vehicle franchisees pursuant to this section for recall remedies or repairs, or for compensation where no part or repair is reasonably available and the motor vehicle is subject to a stop-sale notice or do-not-drive notice, shall be subject to the same limitations and requirements as a warranty reimbursement claim made under section 3 of P.L.1977, c.84 (C.56:10-15). As an alternative, a motor vehicle franchisor may compensate its motor vehicle franchisees under a national recall compensation program, provided that:

(1) compensation under the program is equal to or greater than the compensation provided pursuant to this section; or

(2) the motor vehicle franchisor and motor vehicle franchisee otherwise agree.

e. A motor vehicle franchisor may direct the manner and method in which a motor vehicle franchisee is required to demonstrate the inventory status of an affected used motor vehicle to determine eligibility under this section. However, the manner and method shall not be unduly burdensome and shall not require information that is unduly burdensome to provide.

f. Nothing in this section shall require a motor vehicle franchisor to provide total compensation to a motor vehicle franchisee, which compensation would exceed the total average trade-in value of the affected used motor vehicle as originally determined pursuant to subsection b. of this section.

g. Any remedy provided to a motor vehicle franchisee under this section is exclusive and shall not be combined with any other State or federal recall compensation remedy.

C.39:3-4g Open recall notice, recall database, New Jersey Motor Vehicle Commission.

5. a. As used in this section, "chief administrator," "commission," "manufacturer," "new motor vehicle dealer," "open recall," and "recall" have the same meaning as those terms are defined in section 2 of P.L.2025, c.140 (C.56:10-33).

b. When issuing a motor vehicle registration or registration renewal notice, the commission shall also issue an open recall notice to inform a motor vehicle owner that the National Highway Traffic Safety Administration maintains a recall database through which motor vehicle owners can determine whether a motor vehicle is subject to an open recall. The open recall notice shall also include:

(1) a link to the Internet website through which a motor vehicle owner can access the National Highway Traffic Safety Administration's recall database; and

(2) a statement indicating that each open recall may be repaired by a new motor vehicle dealer approved by the manufacturer of the motor vehicle at no cost to the owner of the motor vehicle, except as provided pursuant to 49 U.S.C. s.30120.

c. (1) The commission may apply for any funding that may be available to defray the costs to implement the provisions of this section, which may include, but shall not be limited to, federal grants.

(2) A manufacturer that conducts business in the State shall assist the commission with its application for any funding that may be available to defray the costs of implementing the provisions of this section, as provided in paragraph (1) of this subsection.

d. In the event that any funding sources acquired pursuant to subsection c. of this section do not cover the commission's costs to implement the provisions of this section, the chief administrator may require each manufacturer that conducts business in the State to pay a fee to the commission, except that the total fees collected shall not exceed the actual costs incurred by the commission each year to implement the provisions of this section. The amount of the fee shall be determined by the chief administrator each year based on documentation of the actual costs incurred by the commission to implement the provisions of this section, which documentation shall be published annually on the commission's Internet website and provided directly to each manufacturer that conducts business in the State.

e. The commission may adopt, pursuant to the "Administrative Procedure Act," P.L.1968, c.410 (C.52:14B-1 et seq.), rules and regulations that are necessary to implement this section, which rules and regulations may include enforcement and penalty provisions for violations.

f. Nothing in this section shall alter the liability under common law of a manufacturer or a new motor vehicle dealer approved by the manufacturer to repair an open recall.

g. The commission shall not be liable to any person for any act or omission related to the open recall notice provided pursuant to this section.

6. Section 1 of P.L.1989, c.24 (C.56:10-7.2) is amended to read as follows:

C.56:10-7.2 Findings, declarations.

1. The Legislature hereby finds and declares the following:

a. Notwithstanding the enactment of the "Franchise Practices Act," P.L.1971, c.356 (C.56:10-1 et seq.), and other legislation dealing with the franchisor-franchisee relationship, including, but not limited to, P.L.1982, c.156 (C.56:10-17 et seq.), inequality of bargaining power continues to exist between motor vehicle franchisors and motor vehicle franchisees. This inequality of bargaining power exists even as to motor vehicle franchisees who have had their franchises for many years and who have expended large sums of money in the promotion of their franchises.

b. This inequality of bargaining power enables motor vehicle franchisors to compel motor vehicle franchisees to execute franchises and related leases and agreements that contain terms and conditions that would not routinely be agreed to by the motor vehicle franchisees absent the compulsion and duress that arise out of the inequality of bargaining power. These terms and conditions are detrimental to the interests of the motor vehicle franchisees in that they require the motor vehicle franchisees to relinquish their rights that have been established by the "Franchise Practices Act" and supplemental legislation and other statutes and laws of this State.

c. As a result, motor vehicle franchisees have been denied the opportunity to have disputes with their motor vehicle franchisors arising out of the franchisor-franchisee relationship heard in an appropriate venue, convenient to both parties, by tribunals established by statute for the resolution of these disputes. It is therefore necessary and in the public interest to ensure that motor vehicle franchisees voluntarily determine whether to agree to certain terms and conditions contained in franchises and related leases and agreements presented to them by motor vehicle franchisors and under circumstances unaffected by the compulsion that arises from the inequality of bargaining power.

d. The distribution, sale, and service of new motor vehicles in the State of New Jersey vitally affects the general economy of this State, and there is a compelling public interest in providing a system of new motor vehicle franchisees to foster competition and promote motor vehicle and highway safety by ensuring there are qualified facilities to provide independently owned and operated sales, warranty, open recall, and routine service for motor vehicles.

e. The new motor vehicle franchise system encourages local investment in motor vehicle dealerships, creates jobs and economic activity in virtually every community in this State, and advances the public interest by fostering an extensive network of independent new motor vehicle franchisees who compete for motor vehicle sales and service business, offer ready access to open recall repair service and warranty service, when needed, and provide routine maintenance to ensure motor vehicle and highway safety.

f. There remains, however, a vast disparity in bargaining power between motor vehicle franchisors and their franchisees, which, if left unchecked, will discourage local investment in the motor vehicle franchise system and result in fewer new motor vehicle franchisees, less competition in the motor vehicle marketplace, and diminished consumer access to qualified motor vehicle warranty services, open recall repair services, and routine service facilities.

g. Despite prior enactments, many motor vehicle franchisees have found it either too risky to oppose their supplier or too burdensome to take on a legal challenge to their motor vehicle franchisors, who control the exclusive supply of motor vehicles, parts, and special equipment to motor vehicle franchisees.

h. As a result, it is necessary for the Legislature to further revise the laws pertaining to motor vehicle franchisees to strengthen and clarify certain provisions of existing law intended

to protect the public from marketplace behavior that has the potential to restrict competition for sales and threaten highway safety by limiting consumer access to essential warranty and open recall service provided by neighborhood dealers of new motor vehicles.

7. Section 3 of P.L.1977, c.84 (C.56:10-15) is amended to read as follows:

C.56:10-15 Reimbursement for services or parts under warranty or law.

3. If any motor vehicle franchise shall require or permit motor vehicle franchisees to perform labor services or provide parts in satisfaction of a repair service offered and reimbursed by the motor vehicle franchisor, including, but not limited to, a warranty, an extended warranty, a maintenance plan, a service-related plan, or a recall:

a. the motor vehicle franchisor shall reimburse each motor vehicle franchisee for such labor services, including diagnostic work, as are rendered and for such parts as are supplied, in an amount equal to the prevailing retail price calculated pursuant to subsections d., e., and j. of this section. The average retail labor rate, average retail labor time allowance, and parts markup, as declared by the motor vehicle franchisee, shall become effective 30 days following the declaration subject to audit by the motor vehicle franchisor only of the sample submitted by the motor vehicle franchisee. Any proposed adjustment of the average retail labor rate, the average retail labor time allowance, or the parts markup made by the motor vehicle franchisor shall be based only on an audit of that sample;

b. the motor vehicle franchisor shall not by agreement, by restrictions upon reimbursement, or otherwise restrict the nature and extent of labor services to be rendered or parts to be provided so that such restriction prevents the motor vehicle franchisee from satisfying the warranty by rendering labor services in a good and workmanlike manner and providing parts that are required in accordance with generally accepted standards. Any such restriction shall constitute a prohibited practice hereunder;

c. the motor vehicle franchisor shall reimburse the motor vehicle franchisee pursuant to subsection a. of this section, without deduction, for labor services performed on, and parts supplied for, a motor vehicle by the motor vehicle franchisee in good faith and in accordance with generally accepted standards, notwithstanding any requirement that the motor vehicle franchisor accept the return of the motor vehicle or make payment to a consumer with respect to the motor vehicle pursuant to the provisions of P.L.1988, c.123 (C.56:12-29 et seq.);

d. for the purposes of this section, the "prevailing retail price" charged by: (1) a motor vehicle franchisee for parts means the price paid by the motor vehicle franchisee for those parts, including all shipping and other charges, multiplied by the sum of 1.0 and the franchisee's average percentage parts markup over the price paid by the motor vehicle franchisee for parts purchased by the motor vehicle franchisee from the motor vehicle franchisor and sold at retail. The motor vehicle franchisee may establish average percentage parts markup under this section by submitting to the motor vehicle franchisor 100 sequential customer paid service repair orders or 90 days of customer paid service repair orders, whichever is less, covering repairs made no more than 180 days before the submission, and declaring the average percentage parts markup. The average percentage parts markup so declared shall go into effect 30 days following the declaration subject to audit by the motor vehicle franchisor only of the sample submitted by the motor vehicle franchisee. Any proposed adjustment of the average parts markup by the motor vehicle franchisor shall be based only on an audit of that sample. A motor vehicle franchisee shall not request a change in the average percentage parts markup more than twice in one calendar year; and (2) a recreational motor vehicle franchisee for parts means actual wholesale cost, plus a minimum 30 percent handling

charge and any freight costs incurred to return the removed parts to the motor vehicle franchisor;

e. (1) if a motor vehicle franchisor supplies, or causes to be supplied, a part or parts for use in a repair rendered under a warranty, an extended warranty, a maintenance plan, a service-related plan, a recall, or other work that is also offered and reimbursed by the motor vehicle franchisor, at no cost or at a reduced cost for use in performing the repair work, the franchisor shall compensate the motor vehicle franchisee in the same manner as the motor vehicle franchisor compensates the motor vehicle franchisee under this section by paying the motor vehicle franchisee for the franchisee's cost of the part, if any, plus an amount equal to the franchisee's parts markup multiplied by the wholesale value of the part. The wholesale value of the part shall be the greater of:

(a) the amount the motor vehicle franchisee paid for the part or a substantially identical part;

(b) the cost of the part in a current or prior established price schedule issued by the motor vehicle franchisor or issued by a third party that has previously supplied the part to the motor vehicle franchisee;

(c) the cost of a substantially identical part in a current or prior established price schedule issued by the motor vehicle franchisor or by a third party; or

(d) the reasonable wholesale price for the part.

(2) The requirements of this section shall not apply to electric propulsion batteries, entire engine assemblies, and entire transmission assemblies. In the case of those parts, the motor vehicle franchisor shall reimburse the motor vehicle franchisee in the amount of 30 percent of what the motor vehicle franchisee would have paid the motor vehicle franchisor for the part if the part had not been supplied by the franchisor other than by the sale of that part to the motor vehicle franchisee;

f. the motor vehicle franchisor shall reimburse the motor vehicle franchisee for parts supplied and labor services rendered under a warranty, an extended warranty, a maintenance plan, or a service-related plan offered by the motor vehicle franchisor within 30 days after approval of a claim for reimbursement. All claims for reimbursement shall be approved or disapproved within 30 days after receipt of the claim by the motor vehicle franchisor. When a claim is disapproved, the motor vehicle franchisee shall be notified in writing of the grounds for the disapproval. No claim that has been approved and paid shall be charged back to the motor vehicle franchisee unless it can be shown that the claim was false or fraudulent, that the labor services were not properly performed, that the parts or labor services were unnecessary to correct the defective condition, or that the motor vehicle franchisee failed to reasonably substantiate the claim in accordance with reasonable written requirements of the motor vehicle franchisor, provided that the motor vehicle franchisee had been notified of the requirements prior to the time the claim arose and the requirements were in effect at the time the claim arose. A motor vehicle franchisor shall not audit a claim after the expiration of 12 months following the payment of the claim unless the motor vehicle franchisor has reasonable grounds to believe that the claim was fraudulent;

g. the obligations imposed on motor vehicle franchisors by this section shall apply to any parent, subsidiary, affiliate, or agent of the motor vehicle franchisor, any person under common ownership or control, any employee of the motor vehicle franchisor, and any person holding one percent or more of the shares of any class of securities or other ownership interest in the motor vehicle franchisor, if a warranty or service or repair plan is issued by that person instead of or in addition to one issued by the motor vehicle franchisor;

h. the provisions of this section shall also apply to motor vehicle franchisor-administered service and repair plans:

(1) if the motor vehicle franchisee offers for sale only the motor vehicle franchisor administered service or repair plan; or

(2) if the motor vehicle franchisee is paid its prevailing retail price for all service or repair plans that the motor vehicle franchisee offers for sale to purchasers of new motor vehicles;

(3) for the first 36,000 miles of coverage under the motor vehicle franchisor administered service or repair plan, if the warranty offered by the motor vehicle franchisor on the motor vehicle provides coverage for less than 36,000 miles; or

(4) for motor vehicles covered by a motor vehicle franchisor administered service or repair plan, if the motor vehicle franchisee does not offer for sale the motor vehicle franchisor administered service or repair plan.

With respect to motor vehicle franchisor administered service or repair plans covering only routine maintenance service, this section applies only to those plans sold to customers on or after the effective date of P.L.1999, c.45;

i. a motor vehicle franchisor shall make payment to a motor vehicle franchisee pursuant to incentive, bonus, sales, performance, or other programs within 30 days after receipt of a claim from the motor vehicle franchisee. When a claim is disapproved, the motor vehicle franchisee shall be notified in writing of the grounds for disapproval. No claim shall be disapproved unless it can be shown that the claim was false or fraudulent or that the motor vehicle franchisee failed to reasonably substantiate the claim in accordance with reasonable written requirements of the motor vehicle franchisor, provided that the motor vehicle franchisee had been notified of the requirements prior to the time the claim arose and the requirements were in effect at the time the claim arose. A motor vehicle franchisor shall not audit a claim after the expiration of 12 months following the payment of the claim;

j. (1) a calculation of the retail rate customarily charged by the dealer for parts markup shall not include the following:

(a) discounts for retail customer repairs or special or promotional events offered by a manufacturer, manufacturer branch, distributor, or distributor branch;

(b) parts sold or repairs performed at wholesale;

(c) routine maintenance, including, but not limited to, the replacement of brakes, bulbs, fluids, filters, batteries, and belts that are not provided in the course of or related to a repair;

(d) items that do not have individual part numbers, including, but not limited to, nuts, bolts, and fasteners;

(e) vehicle reconditioning;

(f) accessories;

(g) repairs of conditions caused by a collision, a road hazard, natural forces, vandalism, theft, or negligent or deliberate damage by an owner, operator, or third party;

(h) parts sold or repairs performed for insurance carriers;

(i) vehicle emission inspections required by law;

(j) manufacturer-approved goodwill or policy repairs or replacements;

(k) repairs for a government agency or a service contract provider employed as an agent of a government agency;

(l) repairs with aftermarket parts when calculating a retail parts rate, not when calculating a retail labor rate;

(m) repairs on aftermarket parts;

(n) replacement of tires or work on tires, including wheel alignments or tire rotations; or

(o) repairs of motor vehicles owned by the franchisee or an employee of a franchisee at the time of the repair;

(2) a calculation of the retail labor time allowance customarily charged by the dealer for customer paid repairs shall not include the following:

(a) discounts for retail customer repairs or special or promotional events offered by a manufacturer, manufacturer branch, distributor, or distributor branch;

(b) parts sold or repairs performed at wholesale;

(c) routine maintenance, including, but not limited to, the replacement of brakes, bulbs, fluids, filters, batteries, and belts that are not provided in the course of or related to a repair;

(d) items that do not have individual part numbers, including, but not limited to, nuts, bolts, and fasteners;

(e) vehicle reconditioning;

(f) accessories;

(g) repairs of conditions caused by a collision, a road hazard, natural forces, vandalism, theft, or negligent or deliberate damage by an owner, operator, or third party;

(h) parts sold or repairs performed for insurance carriers;

(i) vehicle emission inspections required by law;

(j) manufacturer-approved goodwill or policy repairs or replacements;

(k) repairs for a government agency or a service contract provider employed as an agent of a government agency;

(l) repairs with aftermarket parts when calculating a retail parts rate, not when calculating a retail labor rate;

(m) repairs on aftermarket parts;

(n) replacement of tires or work on tires, including wheel alignments or tire rotations; or

(o) repairs of motor vehicles owned by the franchisee or an employee of a franchisee at the time of the repair; and

(3) a calculation of the retail labor rate customarily charged by the dealer for customer paid repairs shall not include the following:

(a) discounts for retail customer repairs or special or promotional events offered by a manufacturer, manufacturer branch, distributor, or distributor branch;

(b) parts sold or repairs performed at wholesale;

(c) routine maintenance, including, but not limited to, the replacement of brakes, bulbs, fluids, filters, batteries, and belts that are not provided in the course of or related to a repair;

(d) items that do not have individual part numbers, including, but not limited to, nuts, bolts, and fasteners;

(e) vehicle reconditioning;

(f) accessories;

(g) repairs of conditions caused by a collision, a road hazard, natural forces, vandalism, theft, or negligent or deliberate damage by an owner, operator, or third party;

(h) parts sold or repairs performed for insurance carriers;

(i) vehicle emission inspections required by law;

(j) manufacturer-approved goodwill or policy repairs or replacements;

(k) repairs for a government agency or a service contract provider employed as an agent of a government agency;

(l) repairs with aftermarket parts when calculating a retail parts rate but not when calculating a retail labor rate;

(m) repairs on aftermarket parts;

(n) replacement of tires or work on tires, including wheel alignments or tire rotations; or

(o) repairs of motor vehicles owned by the franchisee or an employee of the franchisee at the time of the repair;

k. (1) a motor vehicle franchisor shall not:

(a) impose unreasonable handling procedures or unreasonable handling charges upon its motor vehicle franchisees for return or disposal of any part, including electric propulsion batteries, dangerous or unexploded air bag units, or seat belt tensioners;

(b) penalize or charge a motor vehicle franchisee for the return of a defective electric propulsion battery that is returned to the motor vehicle franchisor within 60 days of its removal from a vehicle under warranty service, extended warranty service, a maintenance plan, a service-related plan, a recall, or other work that is also offered and reimbursed by the motor vehicle franchisor; or

(c) charge a dealer more for a late return than the wholesale price charged to the dealer for the electric propulsion battery.

(2) A franchisor shall compensate a franchisee for labor time to package and return ship an electric propulsion battery and shall supply the franchisee with appropriate packaging to facilitate the return;

l. for the purposes of this section, the prevailing retail price for labor shall be the average hourly labor rate charged to retail customers. A motor vehicle franchisee may establish its average labor rate under this section by submitting to the motor vehicle franchisor 100 sequential customer paid service repair orders or 90 days of customer paid service repair orders, whichever is less, covering customer paid repairs made no more than 180 days before the submission. The average retail labor rate shall be calculated by multiplying the total labor charges in the sample by 1.0 and dividing that amount by the total number of labor hours in the sample. The average retail labor rate so declared shall go into effect 30 days following the declaration subject to audit by the motor vehicle franchisor only of the sample submitted by the motor vehicle franchisee. Any proposed adjustment of the average retail labor rate made by the motor vehicle franchisor shall be based solely on an audit of that sample;

m. a motor vehicle franchisor shall provide adequate and fair compensation to each motor vehicle franchisee for labor services rendered for a repair in an amount not less than the amount a retail customer pays for the same labor services with regard to labor time. A motor vehicle franchisee may apply to its motor vehicle franchisor to be reimbursed for labor time according to, at the motor vehicle franchisee's discretion, an established average retail labor time allowance, in lieu of the motor vehicle franchisor's labor time guide for franchisor-paid repairs or service, by submitting to the motor vehicle franchisor the multiplier established by taking the number of hours billed in 100 sequential customer paid service repair orders or 90 days of customer paid service repair orders, whichever is less, covering repairs made no more than 180 days before the submission, and dividing that by the number of hours permitted by the motor vehicle franchisor for any such repairs under the motor vehicle franchisor's labor time guide for franchisor-paid repairs or service. The resulting quotient shall be applied to the motor vehicle franchisor's labor time guide to establish the motor vehicle franchisee's average retail labor time allowance. The average retail labor time allowance so declared shall go into effect 30 days following the declaration subject to audit by the motor vehicle franchisor only of the sample submitted by the motor vehicle franchisee. Any proposed adjustment of the average labor time allowance made by the motor vehicle franchisor shall be based only on an audit of that sample.

Upon payment of a claim for labor services under this section by the motor vehicle franchisor to the motor vehicle franchisee, the motor vehicle franchisee shall compensate its factory-certified flat rate technicians performing work on a warranty, an extended warranty, a maintenance plan, a service-related plan, a recall, or other work that is also offered and reimbursed by the motor vehicle franchisor;

n. a motor vehicle franchisee shall not request a change in the average percentage parts markup, labor time allowance, or retail labor rate more than twice in one calendar year;

o. a motor vehicle franchisor shall not recover its costs, except as provided in this section, from a motor vehicle franchisee within this State, including, but not limited to, an increase in the wholesale price of a vehicle or a surcharge imposed on a motor vehicle franchisee solely, which increase is intended to recover the cost of reimbursing a motor vehicle franchisee for parts and service pursuant to this section. However, a motor vehicle franchisor shall not be prohibited from increasing prices for vehicles or parts in the normal course of business;

p. a motor vehicle franchisor shall not charge back any claim paid for labor services and parts provided in the performance of a warranty, an extended warranty, a maintenance plan, a service-related plan, a recall, or other work that is also offered and reimbursed by the motor vehicle franchisor for an incentive, bonus, sales, performance, or other program without providing written notice to the motor vehicle franchisee within 30 days from the audit, which explains in detail the basis for each of the proposed chargebacks and the methodology by which the franchisee was selected for audit or review. After all internal dispute resolution processes provided through the motor vehicle franchisor have been resolved, the motor vehicle franchisor shall provide final notice to the motor vehicle franchisee of the final amount of the proposed chargeback. If the motor vehicle franchisee or its representative institutes an administrative or judicial action for a violation of the "Franchise Practices Act," P.L.1971, c.356 (C.56:10-1 et seq.), challenging the chargeback within 30 days of the receipt of the final notice, the total proposed chargeback amounts shall be stayed, without bond, until the final judgment has been rendered in the action. A motor vehicle franchisor shall not deny or charge back a claim paid for labor services and parts provided in the performance of an open recall, warranty, or other service agreement or for an incentive, bonus, sales, performance, or other program unless the motor vehicle franchisor satisfies its burden of proof that the motor vehicle franchisee did not make a good faith effort to comply with the reasonable written procedures of the motor vehicle franchisor, that the motor vehicle franchisee did not actually perform the work, or that the claim was materially false or fraudulent. A motor vehicle franchisor shall not deny or charge back a claim due to an administrative or scrivener's error in the submission of the claim; and

q. a motor vehicle franchisor shall not unilaterally reduce or otherwise manipulate the price of parts required for a warranty, an extended warranty, a maintenance plan, a service-related plan, a recall, or other work that is also offered and reimbursed by the motor vehicle franchisor in a manner that unfairly and unilaterally allows the motor vehicle franchisor to reduce the level of compensation paid to motor vehicle franchisees, including changes to price within 60 or fewer days preceding an announcement of a recall, any time after a recall, or after a warranty claim has arisen. A motor vehicle franchisor shall not manipulate the price of parts required for warranty or open recall services by creating a new or additional part number for the same part used in warranty or recall repair in a manner that unfairly and unilaterally allows the motor vehicle franchisor to reduce the level of compensation paid to motor vehicle franchisees for warranty and open recall services that the motor vehicle franchisees provide to consumers.

8. This act shall take effect on the first day of the seventh month following enactment and shall apply to motor vehicle franchise agreements in effect on or after the effective date of P.L.2025, c.140 (C.56:10-32 et al.) but shall not apply retroactively to any cause of action that shall have arisen prior to the effective date of P.L.2025, c.140 (C.56:10-32 et al.).

Approved September 11, 2025.